## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

DONNA WALKER,

        Plaintiff,

   v.

MARTIN O'MALLEY, Commissioner of
Social Security,

        Defendant.

CIVIL ACTION NO.: 5:22-cv-72

## O R D E R

Plaintiff contests the decision of Administrative Law Judge Antony Saragas ("the ALJ"

or "ALJ Saragas") denying her claim for Supplemental Security Income.  Plaintiff urges the

Court to reverse the ALJ's decision.  Doc. 14 at 24.  Defendant asserts the ALJ's decision should

be affirmed.  Doc. 17 at 5.  For the following reasons, the Court **REMANDS** the ALJ's

decision to the Commissioner under sentence four of 42 U.S.C. § 405(g).  The Court **DIRECTS**

the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed an application for Supplemental Security Income on March 13, 2018.[1]  R.

64.[2]  On March 31, 2022, ALJ Saragas held a hearing, at which Plaintiff, who was represented

---

[1]     Plaintiff previously filed an application for supplemental security income on August 27, 2013, and ALJ Craig R. Petersen held a hearing on April 5, 2016.  ALJ Petersen issued a decision on August 16, 2016.  ALJ Petersen's decision is not at issue in this case but is included in Plaintiff's record.  R. 308–331.

[2]     A transcript of the entire proceedings before the Social Security Administration appears at Document Number 11.  The transcript includes paginated Record cites.  Docs. 11-1 to 11-17.  The undersigned refers to the transcript using these same Record cites.

by counsel, appeared and testified.  Id.  Jack Patton, a vocational expert, also appeared at the

hearing.  Id.  ALJ Saragas denied Plaintiff's claims after the hearing in a decision issued on April

20, 2022.  R. 64–86.  The Appeals Council denied Plaintiff's request for review, making the

ALJ's decision the final decision of the Commissioner.  R. 3.

Plaintiff, born on July 17, 1980, was 37 years old at the time of the alleged onset date and

41 years old at the time of the ALJ's decision in 2022.  R. 84.  She has at least a high school

education.  Id.  Plaintiff has no past relevant work.  Id.

## DISCUSSION

### I.    The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition

of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or
> mental impairment or impairments are of such severity that [s]he is not only
> unable to do [her] previous work but cannot, considering [her] age, education, and
> work experience, engage in any other kind of substantial gainful work which
> exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step

process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520,

416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id.

If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.

Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the

claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she can adjust other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff did not engage in substantial gainful activity since her alleged onset date, March 13, 2018. R. 66. At step two, ALJ Saragas determined Plaintiff had the following severe impairments: lumbar and cervical spine degenerative disc disease; left ankle fracture status-post open reduction and internal

fixation ("ORIF"); fibromyalgia; idiopathic peripheral neuropathy; bilateral plantar fasciitis; obesity; obstructive sleep apnea; generalized anxiety disorder; post-traumatic stress disorder ("PTSD"); bipolar disorder; panic disorder without agoraphobia; pain disorder; and major depressive disorder.  Id.  At the third step, the ALJ determined Plaintiff's impairment or combination of impairments did not meet the severity of a listed impairment.  R. 67.

The ALJ found Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, except Plaintiff can occasionally stoop, kneel, crouch, and climb ramps and stairs.  R. 72.  Plaintiff cannot crawl or climb ladders, ropes, or scaffolds.  Id.  Plaintiff cannot work around hazards such as unprotected heights or moving mechanical parts.  Id.  Plaintiff cannot work on uneven terrain or drive commercially.  Id.  Plaintiff can occasionally operate foot controls with both lower extremities.  Plaintiff can frequently finger, feel, and handle with the bilateral upper extremities.  Id.  Plaintiff is limited to simple, routine, repetitive tasks and instructions.  Id.  Plaintiff can occasionally interact with coworkers and supervisors but have no interaction with the public.  Id.  Plaintiff can have occasional changes in the workplace environment or routine and can sustain no more than two hours uninterrupted concentration, persistence, and pace without a work break.  Id.

At the next step, the ALJ determined Plaintiff has no past relevant work and transferability of job skills is not an issue.  R. 84.  The ALJ concluded at the fifth and final step Plaintiff could perform jobs, such as a lens inserter, printed circuit board screener, and final assembler, all of which exist in significant numbers in the national economy.  R. 84–85.

## II.    Issues Presented

Plaintiff asserts the ALJ erred because the ALJ's RFC determination is unsupported by substantial evidence.  Doc. 14.  Specifically, Plaintiff states: (1) the ALJ did not account for a

probationary period in his step five decision; and (2) the ALJ did not account for limitations from the State agency physician in his RFC finding.  Plaintiff also argues the ALJ's appointment was improper under the Federal Vacancy Reform Act.

## III.    Standard of Review

It is well established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not

subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), overruling by statute on other grounds recognized by Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.    The ALJ Erred in His Step Five Analysis**

Plaintiff argues the jobs identified by the VE at the hearing all involve a learning period, and that learning period requires functional abilities the ALJ determined Plaintiff lacked. Plaintiff contends the ALJ failed to account for her inability to successfully complete the learning periods, and successful completion is essential to keeping the three jobs the VE identified.  Doc. 14 at 13.  Defendant argues the ALJ's hypothetical question to the VE included all the limitations in the ALJ's RFC finding, and substantial evidence supports the ALJ's assessment.  Doc. 17 at 6.

At the last step of the sequential evaluation, and after assessing the claimant's RFC, the ALJ must determine whether a significant number of jobs exist in the national economy that the claimant can perform.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). The ALJ may make this determination by applying the Medical Vocational Guidelines or by utilizing the testimony of a vocational expert.  Id.  When relying upon the testimony of a vocational expert, the ALJ must pose hypothetical questions to the vocational expert that encompass all of the claimant's impairments.  Id.  The underlying assumptions of the hypothetical questions posed to the vocational expert must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence.  McSwain v. Bowen, 814 F.2d 617, 619–20 (11th Cir. 1987);

Pendley v. Heckler, 767 F.2d 1561, 1562–63 (11th Cir. 1985); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a [vocational expert]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)). However, a hypothetical question need not incorporate alleged impairments the ALJ has properly discredited or found to be unsupported by the medical evidence.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

ALJ Saragas presented a hypothetical to VE Patton at the hearing.[3]  In the hypothetical, the ALJ described a hypothetical individual with various limitations, including: "Person should have no more than occasional interaction with coworkers and supervisors.  Person should have no public interaction."  R. 226.  The limitations in the hypothetical precisely tracked the limitations the ALJ adopted in Plaintiff's RFC.  R. 72.  The ALJ then asked the VE: "If you start with those limitations alone, Mr. Patton, and having no past work to consider, can you find sedentary, unskilled work in the National Economy?"  R. 227.  The VE testified there were three jobs that an individual with these limitations could perform that exist in significant numbers in the national economy, all of which were characterized as SVP level 2, unskilled, sedentary exertional level: Lens Inserter (7,000 jobs); Printed Circuit Board Screener (13,000 jobs), and; Final Assembler (14,000 jobs).

---

[3]      The ALJ posed two hypotheticals to the VE (identified as 1 and 2), but only hypothetical 1 matters to Plaintiff's present challenge.  In hypothetical 2, the ALJ added limitations for being "off task from work on an average of at least two hours per day" or being "absent from work on average at least one day per week."  R. 227.  The VE testified these additional limitations would eliminate all jobs.  R. 228.  Ultimately, the ALJ did not include the additional limitations in hypothetical 2 in Plaintiff' RFC.  Therefore, hypothetical 2 is irrelevant.  For the remainder of this Order, I refer to one hypothetical, in the singular, by which I mean hypothetical 1.

After the ALJ questioned the VE, Plaintiff's counsel conducted her examination.  R. 228.
Plaintiff's counsel first asked the VE to confirm that the three jobs he identified only require
"occasional" interaction with supervisors.  The VE responded: "That is true, except during the—
you know, the learning of the activity.  In that scenario there would be more supervision, but it
would—you know, it's a pretty fast learning curve for these jobs."  R. 229.  The VE then
testified that the learning period for these three jobs is generally 30 days.  Plaintiff's counsel then
asked: "Would that [hypothetical] individual be able to sustain competitive employment if they
have a variable response throughout the eight-hour workday to interaction with their supervisor."
The VE responded that once an employee learns the job, there is not a lot of supervision, but then
stated: "But I can't deny that there would be instances and opportunities for supervision beyond
[occasional interaction]."  R.230.

In his decision, the ALJ relied on the VE's testimony concerning the availability of the
three jobs above in the national economy for someone with Plaintiff's limitations.  Based on this,
the ALJ concluded Plaintiff is not disabled.  Notably, the ALJ did not mention the learning
period for these three jobs.

Plaintiff now argues the ALJ should have considered the learning period for the three
jobs and whether a person with Plaintiff's limitations would be able to perform the jobs'
requirements during that period.  Stated differently, Plaintiff contends the VE testified that all
three of the identified jobs include a learning period, and an individual would need to have more
than "occasional" interaction with supervisors during that period.  Plaintiff points out the ALJ
concluded she could only have occasional interaction with supervisors in the RFC, so the
learning period necessarily involves a capability that Plaintiff lacks.

As an initial matter, in Plaintiff's brief, she frequently refers to a "probationary" period rather than a learning period.  There is no reference to a probationary period in the record.  The ALJ did not use that term, and neither did the VE or Plaintiff's counsel during the hearing.  Some cases have used that term, but that is only because the VEs in those cases discussed probationary periods.  See, e.g., Sczepanski v. Saul, 946 F.3d 152, 155 (2d Cir. 2020).  The terms have different meanings.  A learning period is simply that, an amount of time during which an employee learns how to perform a job.  A probationary period suggests the employer has imposed some special conditions or performance requirements, and failure to meet those conditions or requirements could result in consequences, such as termination.

Although the terms probationary period and learning period have different meanings, the difference seems immaterial here.  For either period, an employee would need to satisfy certain threshold requirements for continued employment.  An employee working in a job with a learning period would necessarily need to successfully learn to perform the job.  Failure to do so would almost certainly result in termination.  Furthermore, I have not identified any authority that makes any meaningful distinction between learning periods and probationary periods.  Therefore, I conclude the distinction is immaterial.

Plaintiff argues the ALJ was required to consider any additional requirements that would arise during a learning period in assessing whether jobs exist in the national economy that Plaintiff could perform.  Thus, Plaintiff contends the learning period was relevant to the disability determination.  Defendant does not appear to challenge this general proposition.  Although the parties have identified no controlling Eleventh Circuit authority on this point, and my own research has revealed none, I conclude probationary periods and learning periods are relevant to a claimant's disability status.  See id. (reversing trial court and concluding

probationary periods are relevant to disability determination); <u>Sandy C. v. Kijakazi</u>, No. 421CV00173, 2023 WL 2133835, at *4 (S.D. Ind. Feb. 21, 2023) (collecting cases that have "held that if a claimant is unable to successfully complete a probationary period, jobs that require completion of the same are unavailable to them").

      I now turn to the crux of Plaintiff's argument, namely that the ALJ's step five conclusion is not supported by substantial evidence because the ALJ failed to address the VE's testimony concerning a learning period. Having fully considered the parties' positions, and the authorities provided, I conclude the ALJ's step five conclusion is not supported by substantial evidence. During questioning by Plaintiff's counsel, the VE testified that the three specific jobs he identified involved a 30-day learning period and that period would require more than occasional interaction with supervisors. This additional requirement—more than occasional interaction—is contrary to the RFC adopted by the ALJ, which limited Plaintiff to no more than occasional interaction with supervisors. The ALJ did not explain how Plaintiff could successfully complete the required learning period for these jobs, considering Plaintiff's limitations and the demands of the learning periods. Several other courts have reached similar conclusions. <u>See, e.g.,</u> <u>Shelton v. Colvin</u>, No. 114CV01920, 2015 WL 13739358, at *3 (S.D. Ind. Oct. 13, 2015) (remanding case because jobs identified by the VE entailed a probationary period where the claimant must have more interaction with supervisors and co-workers than the ALJ concluded the claimant was capable of); <u>Kenneth P. v. Saul</u>, No. 4:19-CV-0059, 2019 WL 6463449, at *6 (S.D. Ind. Dec. 2, 2019); <u>Bernard L. v. Saul</u>, No. 19 CV 1223, 2020 WL 7027637, at *3 (N.D. Ill. Nov. 30, 2020) ("The ALJ's step five determination cannot stand because it ignores the obvious contradiction between plaintiff's limitation to only occasional interactions with supervisors and coworkers and

the VE's testimony that a claimant with that limitation could not perform an SVP 2 job with a thirty-day training period.").

Defendant contends other courts have rejected arguments like Plaintiff's as "untenable." Doc. 17 at 6. Defendant primarily relies on three cases. I address each case in turn. In Wright v. Comm'r of Soc. Sec., the ALJ stated in the RFC determination that the plaintiff was limited to superficial interaction with others "except during a 30-day training period which would require more than superficial contact with a supervisor." No. 1:12CV1103, 2013 WL 3873947, at *2 (N.D. Ohio July 25, 2013). The court determined the exception to the plaintiff's limitations in the RFC for a training period was supported by substantial evidence. The difference between the RFC in Wright and the RFC in this case strengthens Plaintiff's argument. If the ALJ in this case had included a similar "exception" for a learning period in Plaintiff's RFC, and that exception was supported by substantial evidence, the ALJ's step five determination would be sound. The ALJ's approach in Wright demonstrates appropriate consideration of a training period. But the RFC in this case contains no such consideration for the learning period. Thus, Wright is distinguishable.

Defendant also cites to Elizabeth L. F. v. Kijakazi, No. 2:22-CV-506, 2023 WL 3981441, at *4 (D. Utah June 13, 2023). This case is factually distinguishable. In Elizabeth L., the ALJ found the claimant was limited to occasional interactions with coworkers, supervisors, and the general public. The plaintiff argued the ALJ erred at step 5 because the plaintiff could not complete a probationary period for the identified jobs. Here is where the facts diverge. In Elizabeth L., there was "no evidence before the court regarding the necessity of a probationary period of employment for the identified jobs." Id. Unlike the instant case, there is no indication that the VE in Elizabeth L. testified that the available jobs required a probationary period or that

such a period involved more onerous requirements than performance of the job.  Defendant's reliance on <u>Elizabeth L.</u> is misplaced.

Lastly, Defendant relies on <u>Hemby v. Berryhill</u>, No. 15 CV1471, 2017 WL 951785, at *11 (E.D. Mo. Mar. 10, 2017).  Admittedly, <u>Hemby</u> provides more support for Defendant's position.  In <u>Hemby</u>, the ALJ found the claimant could have only occasional interaction with supervisors and coworkers.  As in this case, the VE in <u>Hemby</u> testified the available jobs all required a 30-day learning period, during which there would be "a little bit more frequent contact with the supervisor . . . ."  The plaintiff argued he could not perform the jobs identified because he could not successfully complete the learning period.  The court rejected the claimant's challenge, reasoning that the VE ultimately testified that a hypothetical individual with the claimant's limitations could perform the job, despite the added requirements during the learning period.

The court in <u>Hemby</u> certainly reaches the conclusion Defendant asks for in this case.  However, I do not find the reasoning in <u>Hemby</u> to be persuasive.  The <u>Hemby</u> court's reasoning and conclusion imply that the learning period for a job is irrelevant to the disability determination.  I reject that conclusion.  If a learning or probationary period entails more onerous requirements than the performance of the actual job, then the ALJ should consider whether the claimant can perform those requirements, given the claimant's limitations.  Therefore, I do not find <u>Hemby</u> persuasive.  <u>See</u> <u>Bernard L.</u>, 2020 WL 7027637, at *5 (discussing and rejecting the reasoning of <u>Hemby</u>).

Defendant makes one additional argument.  Defendant ostensibly acknowledges the VE testified the three available jobs would require more than occasional interaction during the learning period, but, Defendant argues, the VE did not testify such interaction would be required

all day, every day for the 30-day period.  Defendant seems to argue Plaintiff could engage in

some days of "more than occasional" interaction with supervisors, but could not do so for the

whole learning period.  Defendant's argument is not supported by the record.  The ALJ limited

Plaintiff to occasional interactions, and the VE testified the learning periods for the three

available jobs would require more than occasional interactions.  The VE's testimony

demonstrates the VE was referring to interactions with supervisors that would last more than one

third of an eight-hour workday when he testified the learning period would involve interactions

"beyond" occasional interactions.  Furthermore, nothing in the ALJ's decision or the record

supports Defendant's argument.  This argument is, at most, a post hoc rationalization, which the

Court cannot consider.  See Dempsey v. Comm'r of Soc. Sec., 454 F. App'x 729, 733 (11th Cir.

2011) (explaining a court will not affirm based on a post hoc rationale that "might have

supported the ALJ's conclusion") (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir.

1984)).

        In sum, I conclude the learning period required by the three jobs identified by the VE is

relevant to the disability determination and must be considered at step five.  The VE testified that

more than occasional interactions with supervisors would be required during the learning period,

but the ALJ concluded Plaintiff could have no more than occasional interactions with

supervisors.  Therefore, the ALJ was required to explain how Plaintiff could successfully

complete the learning period for these jobs with the limitations identified in Plaintiff's RFC.

Because the ALJ failed to do so, this case must be remanded.[4]

---

[4]        A similar challenge was recently rejected in Lee v. O'Malley, No. CV 323-052, 2024 WL
710894, at *7 (S.D. Ga. Feb. 21, 2024), report and recommendation adopted, No. CV 323-052, 2024 WL
1119489 (S.D. Ga. Mar. 14, 2024).  The challenge was rejected in that case in large part because the VE's
testimony about probationary periods was generalized, equivocal, and not specific to the available jobs.

Accordingly, I **REMAND** the case to the Commissioner for further consideration.  Given my decision, I decline to address Plaintiff's remaining enumerations of error.[5]  Doc. 14 at 14–24.

## CONCLUSION

For these reasons, the Court **REMANDS** the ALJ's decision to the Commissioner under sentence four of 42 U.S.C. § 405(g).  The Court **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

**SO ORDERED**, this 29th day of March, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

In contrast, the VE testimony in this case was specific to the three available jobs and the testimony was unequivocal.  I do not consider the conclusions or reasoning in these two matters to be at odds.

[5]     I note one of Plaintiff's other arguments is likely to fail.  Plaintiff argues ALJ Saragas lacked the authority to hear and decide Plaintiff's claim because ALJ Saragas's appointment was invalid.  Doc. 14 at 17–24.  Identical arguments have been advanced, carefully analyzed, and soundly rejected in three recent appellate opinions.  See Dahle v. Kijakazi, 62 F.4th 424, 427 (8th Cir. 2023), cert. denied sub nom. Dahle v. O'Malley, 144 S. Ct. 549 (2024) ("Subsection 2 can act as a tolling provision to subsection 1. But it also provides an independent period of time for an individual to serve as an acting officer." and "Berryhill was properly serving as Acting Commissioner when she ratified the appointment of the SSA ALJs."); Rush v. Kijakazi, 65 F.4th 114, 124 (4th Cir. 2023), cert. denied sub nom. Rush v. O'Malley, No. 23-243, 2024 WL 674707 (U.S. Feb. 20, 2024) ("An acting officer may serve while a nomination is pending in accordance with § 3346(a)(2) regardless of whether her service under § 3346(a)(1) expired before the nomination was submitted.  Berryhill therefore was properly serving as SSA Acting Commissioner when she ratified the ALJs' appointments."); Seago v. O'Malley, 91 F.4th 386, 393 (5th Cir. 2024) ("[W]e conclude that § 3346(a)(2) permitted Berryhill to resume her role as Acting SSA Commissioner upon Saul's nomination in April 2018.  As such, she was lawfully serving as Acting SSA Commissioner in July 2018 when she ratified the appointment of all SSA ALJs.").  No Circuit Court of Appeals has reached a different conclusion.  I do not resolve this argument now, but note the significant persuasive authority against Plaintiff's arguments.